## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DEVON GEORGE,**

            **PLAINTIFF,**

    **v.**

**ROBERN, INC.,**

**KOHLER CO.,**

    **and**

**BONNIE CHORUBY,**

          **DEFENDANTS.**

**Civil Action No. _____**

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY DEMAND

Plaintiff Devon George, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1.    This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Devon George (hereinafter "Plaintiff" or "Ms. George"), a former employee of Defendant Kohler Co. (hereinafter "Kohler") and Defendant Robern, Inc. (hereinafter "Robern"), a subsidiary of Defendant Kohler Co.  Despite her loyalty and consistent performance, Ms. George was subjected to a hostile work environment, retaliated against and terminated from her employment after she reported her legitimate concerns regarding atypical hiring practices that resulted in a lack of diversity in hiring.  Further, Defendants Kohler and Robern breached a contract with Ms. George by failing to pay severance owed to her due to a restructuring by wrongfully attempting to classify Ms. George's separation as having been for an alleged ethical

violation where there had been none, failed to pay Ms. George her earned wages in the form of her severance and bonus for 2024, or any portion of that bonus, despite her working for nearly the entire year, and Robern and Kohler, along with Defendant Bonnie Choruby, defamed Ms. George by communicating to third parties that Ms. George had been terminated for ethical violations where there had been none.

2.      This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the Pennsylvania Wage Payment and Collection Law, 43 Pa C. S. §260.1, et seq. ("WPCL"), and the common law of the Commonwealth of Pennsylvania.

## JURISDICTIONAL STATEMENT

3.      This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4.      The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5.      This Court has supplemental jurisdiction over any state claims herein pursuant to 28 U.S.C. § 1367.

6.      All conditions precedent to the institution of this suit have been fulfilled. On June 17, 2025, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pensylvania Human Relations Commission ("PHRC"). On February 6, 2026, the EEOC issued a

Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

## **VENUE**

7.      This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8.      This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed by Defendants Kohler and Robern in this jurisdiction.

## **PARTIES**

9.      Plaintiff Devon George is an adult female citizen and resident of Wyncote, Pennsylvania and the United States of America.

10.      Defendant Robern is a Pennsylvania corporation with its corporate headquarters and principal place of business at 701 North Wilson Avenue, Bristol, PA 19007, where Plaintiff was employed.

11.      Defendant Kohler is a Wisconsin corporation with its corporate headquarters and principal place of business in Wisconsin.

12.      Defendant Bonnie Choruby is an adult citizen and resident of Fort Worth, Texas and the United States of America.

13.      At all relevant times, Defendant Kohler is and has been an employer employing more than 500 employees.

---

[1] When Plaintiff dual-filed her Charge of Discrimination as a Complaint with the PHRC, she asserted claims pursuant to the Pennsylvania Human Relations Act ("PHRA"). It has been less than one year since Plaintiff dual-filed her Charge of Discrimination as a Complaint with the PHRC. Plaintiff will seek to amend her complaint in this matter to add her claims pursuant to the PHRA once she has exhausted her administrative remedy as to those claims.

14.     At all relevant times, Defendant Robern is and has been an employer employing more than 50 employees.

15.     At all relevant times, employees of Defendants Kohler and Robern acted as agents and servants for Defendants Kohler and Robern.

16.     At all relevant times, employees of Defendants Kohler and Robern were acting within the scope of their authority and in the course of their employment under the direct control of Defendants Kohler and Robern.

17.     At all times material hereto, Defendants Kohler and Robern acted by and through their authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendants Kohler and Robern and in furtherance of Defendants Kohler and Robern's business.

18.     At all relevant times hereto, Plaintiff Devon George was an "employee" of Defendants Kohler and Robern within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

19.     At all relevant times hereto, Defendants each were an "employer" and/or "person" under the laws at issue in this matter and are accordingly subject to the provisions of said laws.

20.     This Honorable Court has jurisdiction over the Defendants.

## FACTS

21.     Ms. George began her employment with Kohler and Robern in 2015.

22.     Ms. George served as General Manager of Robern, overseeing all Robern functions - from industrial design to customer service – with the exception of human resources and finance duties.

23.     Ms. George was highly successful in her role, receiving meets or above expectations in all of her performance reviews.

24.     Additionally, under Ms. George's leadership and direction, Robern carried the profitability for the luxury and wellness brand subsidiaries of Kohler.

25.     Despite her objective success, Ms. George was subjected to cruel and hostile treatment and the hostility towards Ms. George increased significantly after she complained about and objected to atypical hiring practices that resulted in discrimination in hiring and hiring processes with respect to women and minorities.

26.     After Ms. George objected to and complained about these practices, including by expressing that key opportunities should have been made available to a broader group and subject to a fair and competitive process, Ms. George faced increased antagonism, eventually culminating in her wrongful termination on December 19, 2024.

27.     Among other things, Ms. George was called demeaning names and pushed to do things that she was not comfortable doing.

28.     When Ms. George disagreed with this treatment, she would be treated in a hostile manner in front of others.

29.     Kohler and Robern breached their contract with Ms. George, withheld and refused to pay her earned wages, and defamed Ms. George to third parties.

30.     Ms. George is aware that since mid-2024, a merger was planned which would result in a significant restructuring that would result in Ms. George's position being made redundant and severance due to her.

31.     In fact, Vice President Alexander Dornbracht announced to Robern's customers that the merger had been planned since mid-year last year.

32.     Rather than include Ms. George in layoffs in connection with the merger, and pay her the severance she would have otherwise been due in accordance with promises contained in Kohler and Robern's policies, Kohler and Robern breached this contract, or breached the duty of good faith and fair dealing implied in that contract, by terminating Ms. George preemptively and claiming it was for an unfounded and knowingly false ethical violation.

33.     Ms. George had done nothing wrong and engaged in no unethical conduct, making clear that this alleged reason was merely pretext to use to justify her termination and refuse to pay her severance in accordance with Kohler and Robern's policy and to refuse to pay Ms. George her contractually due 2024 bonus.

34.     Ms. George was due a significant bonus for 2024.

35.     Kohler and Robern terminated Ms. George in late December 2024 but refused to pay Ms. George any bonus for 2024, despite the fact that she worked the entire year, earned the bonus, and despite the fact that there was no legitimate reason to terminate her.

36.     Kohler and Robern terminated Ms. George, and refused to pay her severance and bonus, in breach of Ms. George's contracts and Kohler and Robern's promises amounting to a contract.

37.     In or about mid-November 2024, after the merger when anticipated severance packages were already planned, as a result of an idea by one of the leaders on Ms. George's team in an engagement brainstorm with the leadership team, Ms. George proposed distributing excess and obsolete products to employees in a giveaway.

38.     This proposal followed an eighteen (18) month process of seeking approval to donate/dispose of the products and working to off-ramp the products through selling efforts.

39.     Ms. George mentioned this proposal to Bonnie Choruby, President of the Kohler Luxury Brands, including Robern, who stated, "Oh, I might be interested [in participating]."

40.     Ms. George also sought feedback and review of this proposal from Human Resources and Finance.

41.     No concerns were raised at the time; in fact, at least one Human Resources representative aided in the execution of the proposal.

42.     Based on these discussions, Ms. George was under the impression that she was proceeding appropriately.

43.     She therefore worked with her team to identify sixty-three (63) pieces out of thousands of products and ensured that they would not be resold but instead would be made available to employees to experience the products that they design, build, and sell every day in their own homes.

44.     Ms. George also planned to take some of the products for her home and rental property as well.

45.     Ms. George asked Human Resources and Finance for feedback on her order, and again, no concerns were raised at the time.

46.     On or about December 2, 2024, after Ms. George had repeatedly raised concerns regarding discriminatory hiring practices, but before the product was distributed in the giveaway, the potential for a conflict of interest was identified by another Human Resources representative who raised concerns related to tax implications and Ms. George taking some product for herself.

47.     The possible tax implications identified were the potential for employees to be taxed to receive products and company tax breaks that would have been received from disposal or donation of the product.

48.     However, the latter possible implication had already been discussed with Finance, which had determined that it was not a concern.

49.     Ms. George immediately offered to cancel her selection but inquired as to whether it would be possible to still give product to the other associates.

50.     Ultimately, Kohler and Robern were unable to identify a resolution by the deadline for disposal of the product, which was the end of the year, and thus cancelled the product giveaway.

51.     Kohler and Robern then initiated a purported ethics investigation into the proposal.

52.     However, there were numerous irregularities with the investigative process.

53.     Instead of engaging a neutral third party to conduct an investigation, Ms. George was only able to provide information to Ms. Choruby and one Human Resources individual, who was the supervisor of the Human Resources representative who had previously reviewed the product giveaway proposal and expressed no concerns, and only after Ms. George specifically requested this opportunity.

54.     Further, to Ms. George's knowledge, no other individual involved in the giveaway proposal was formally interviewed during the investigation.

55.     Ms. George was also not provided with any information about the timing of the investigation, the progress of the investigation, or any of the individuals involved in the investigation.

56.     The lack of process and irregularities with the investigation were unusual, as Ms. George is aware that in at least one other ethics investigation, Kohler and Robern appointed an uninvolved investigator for that investigation, and multiple individuals were interviewed.

57.     On or about December 17, 2024, Ms. Choruby and Virginia Marable, Human Resources Director, both of whom lived in Oregon at the time, informed Ms. George that they

would be arriving on site at Robern in Pennsylvania to hold an ethics training on December 19, 2024, and asked Ms. George to ensure that the entire leadership team would be on site.

58.    Ms. George did as she was instructed.

59.    On December 19, 2024, Ms. Choruby and Ms. Marable arrived on site at Robern, called Ms. George into a meeting in a glass office, and terminated her, allegedly as a result of a conflict-of-interest ethics violation.

60.    Ms. George was then forced to walk past her entire team on her way out of the office following her termination as a way to publicly shame and humiliate her.

61.    Kohler and Robern's decision to terminate Ms. George, and in such a public manner, was inconsistent with the manner in which Kohler and Robern treated other employees with alleged ethical concerns (but who had not complained about discriminatory hiring practices).

62.    Ms. George is aware of an employee who spent thousands of dollars on her company credit card and could not afford to pay it back.

63.    Despite the seriousness of her actions, this employee was not terminated; rather, the same Human Resources supervisor involved in Ms. George's investigation allowed this employee to slowly pay back the money and keep her employment.

64.    Additionally, another employee stole thousands of dollars in the form of procurement card purchases from Kohler and Robern.

65.    This employee was ultimately terminated after an investigation; however, he was not publicly shamed in the same manner as Ms. George and his reputation remained intact.

66.    Notably, despite Ms. George's dedication throughout her nine years of employment, Ms. George was not provided with any severance and Kohler and Robern have refused to pay her 2024 bonus despite the fact that she worked the entire year.

67.     This is in stark contrast to multiple employees – Ms. George is aware of at least five – who were of lower seniority than Ms. George and were terminated due to performance issues, all of whom received severance packages but had not complained about discriminatory hiring practices.

68.     Kohler and Robern's treatment of Ms. George – including the decision to terminate Ms. George's employment, the manner in which she was terminated, and the refusal to pay her severance and bonus – is especially egregious considering that: a) Ms. George was fully transparent throughout the product giveaway process, even requesting feedback from Human Resources and Finance about the proposal and her order, neither of which raised any concerns at the time; b) Ms. George immediately offered to cancel her selection the moment Human Resources raised that the giveaway could potentially involve a conflict of interest; and c) Ms. George did not commit a policy violation as no policy exists with respect to product giveaways.

69.     The alleged reasoning behind Ms. George's termination is extremely suspect given: (1) Ms. George's repeated disclosure of her plans, and the involvement and knowledge of others without objection for several weeks prior to any concerns being raised regarding a conflict of interest; (2) the idea for the product giveaway was initially raised by Catherine Jones during a meeting in early November. Following that meeting, Ms. George referenced this plan during a meeting with Bonnie Choruby and the luxury leadership team during which Ms. Choruby indicated that she might interested in participating in the giveaway herself; (3) Ms. Choruby also later inquired about whether her friend, Sammie Barr, could participate in Robern product discounts "outside the system"; (4) In mid-November, Ms. George consulted with Human Resources and with Finance in writing about the planned giveaway, and specifically noted her intention to participate in the giveaway; (5) Ms. George explicitly sought feedback from human

resources as part of these communications; (6) On November 21, 2024, Ms. George continued her open communications regarding this giveaway, consulting with finance and operations regarding what product could properly be used as part of the giveaway; (7) During this same time, the product orders that were planned to be part of the giveaway were documented in a widely available shared spreadsheet; (8) When a conflict-of-interest concern was raised for the first time by Virginia Marable in early December, Ms. George immediately offered to cancel the giveaway.

70.     These facts, coupled with the inconsistencies that exist between Kohler and Robern's treatment of Ms. George compared to the treatment afforded other employees, strongly suggest retaliation motivated the decision to terminate Ms. George and that the proffered reason is merely pretext.

71.     In light of these circumstances, including the above referenced irregularities and the concerns that Ms. George raised, Ms. George maintains that her termination was unlawful retaliation for her objecting to and complaining about unlawful, discriminatory hiring practices, and was motivated by factors unrelated to the product giveaway she disclosed and for which she sought approval.

72.     In addition to the above-noted wrongdoings against Ms. George, Ms. George has also learned that on December 19, 2024, Kohler, Robern and Ms. Choruby falsely communicated to the Robern leadership team and other third-parties that Ms. George had been terminated for unethical conduct, specifically for a conflict of interest related to the product giveaway.

73.     This defamatory statement – which was made to several third parties - is not only untrue but also is devastating to Ms. George's career, career prospects and professional

reputation, as it creates a false impression that, among other things, she has low moral character, is unethical, and/or is unfit to conduct her business, trade or profession.

74.      Given the circumstances surrounding her termination and the contractual commitments made to her by Kohler and Robern, Ms. George is due significant earned wages in the form of severance benefits.

75.      Moreover, due to the circumstances described herein, Ms. George is contractually owed her 2024 bonus.

76.      Defendants Kohler and Robern breached their contracts with Ms. George as described herein.

77.      Defendants Kohler and Robern wrongfully withheld and refused to pay Ms. George her earned wages as described herein.

78.      Defendants defamed Ms. George as described herein.

79.      Based on the foregoing, Ms. George has been subjected to unlawful retaliation in violation of Title VII.

80.      Ms. George has suffered financial losses, which include, among other things, lost wages, severance and bonus, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendants.

81.      Ms. George has suffered mental anguish and severe emotional distress as a proximate result of the actions and inactions of Defendants.

82.      Defendants and their agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. George severe emotional distress.

## COUNT I
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.
### (Plaintiff v. Defendants Robern and Kohler)

83.    Plaintiff Devon George repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

84.    Based on the foregoing, Defendants Kohler and Robern engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

85.    In retaliating against Ms. George for her objection to and complaints about discrimination, Defendants Kohler and Robern violated Title VII.

86.    Said violations were intentional and willful.

87.    Said violations warrant the imposition of punitive damages.

88.    As the direct and proximate result of Defendants Kohler and Robern's violations of Title VII, Plaintiff Devon George has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred an obligation for attorneys' fees and costs.

## COUNT II
### Breach of Contract
### (Plaintiff v. Defendants Robern and Kohler)

89.    Plaintiff Devon George repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

90.    Given the circumstances surrounding her termination and the contractual commitments made to her by Kohler and Robern, Ms. George is due significant earned wages in the form of severance benefits and her 2024 bonus.

91.     Per the terms of Kohler and Robern policies, in the event of termination of employment without cause as a result of layoff or restructuring, a Kohler or Robern employee, like Ms. George, is to be paid severance.

92.     Ms. George was terminated without cause.

93.     More specifically, because Kohler and Robern's proffered reason for termination – an alleged ethical violation – is so clearly and knowingly false and unfounded, it should be treated as a termination without cause, contractually entitling Ms. George to significant severance.

94.     Kohler and Robern have not paid Ms. George her severance in contrast with other employees impacted by restructuring and layoffs.

95.     Additionally, Ms. George was contractually due a significant bonus for 2024.

96.     Ms. George worked for nearly the entire 2024 calendar year, but Kohler and Robern have failed and refused to pay her earned bonus for 2024, in breach of their contract with Ms. George.

97.     Defendants Kohler and Robern breached their contracts with Ms. George as alleged herein.

98.     Ms. George suffered and seeks damages for Defendants Kohler and Robern's breaches of the aforementioned agreements.

99.     Defendants Kohler and Robern's conduct is without excuse or justification.

100.    As the direct and proximate result of Defendants Kohler and Robern's breach of contract, Plaintiff Devon George has sustained lost benefits of the contract and interest due thereon.

<u>**COUNT III**</u>
**Pennsylvania Wage Payment and Collection Law,**
**43  a C. S. §260.1, <u>et seq.</u> ("WPCL")**
**(Plaintiff v. Defendants Robern and Kohler)**

101.    Plaintiff Devon George repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

102.    At all relevant times, Defendants Kohler and Robern were each an employer as defined by the WPCL.

103.    At all relevant times, Plaintiff was an employee of Defendants Kohler and Robern as defined by the WPCL.

104.    Plaintiff was an employee who was entitled to significant severance upon her termination without cause.

105.    Plaintiff was entitled to a bonus for 2024.

106.    Despite the foregoing, Defendants Kohler and Robern have failed and refused to pay Plaintiff the unpaid severance and 2024 bonus due to her.

107.    Plaintiff's earned but unpaid severance pay and bonus fall within the definition of wages contained in the WPCL.

108.    Defendants Kohler and Robern have failed and refused to pay Ms. George her earned wages for a period beyond thirty days after regularly scheduled paydays.

109.    Ms. George has demanded payment of her earned wages, but Defendants Kohler and Robern have failed and refused to pay Ms. George her earned but unpaid wages.

110.    Defendants Kohler and Robern have no good faith argument that Ms. George is not due her earned but unpaid wages.

111.    As a result of Defendants Kohler and Robern's failure to pay Plaintiff's earned wages due to her, Defendants Kohler and Robern violated the WPCL and the regulations promulgated thereunder.

112.    By virtue of Defendants Kohler and Robern's violations of the WPCL, Plaintiff is entitled to recover from Defendants Kohler and Robern her unpaid wages, plus liquidated damages, interest, costs of suit and attorneys' fees and other such legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Promissory Estoppel**
**(Plaintiff v. Defendants Robern and Kohler)**

113.    Plaintiff Devon George repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

114.    For the reasons set forth above, Defendants Kohler and Robern are liable to Plaintiff under a theory of Promissory Estoppel.

115.    Count IV is brought in the alternative to Count II, above, to the extent that no valid contract is found to exist.

116.    In the alternative, Defendants Kohler and Robern made the promises described herein to Ms. George with respect to her 2024 bonus and severance pay.

117.    In making these promises to Ms. George, Defendants Kohler and Robern knew and reasonably expected to induce action or forbearance by Ms. George, specifically, to continue employment with Defendants Kohler and Robern and forego other lucrative opportunities in the industry.

118.    Based on the promises and representations made by Defendants Kohler and Robern, Ms. George continued working for Defendants Kohler and Robern and forewent other

lucrative opportunities that she could have explored throughout her employment with Defendants Kohler and Robern.

119.    Because Defendants Kohler and Robern broke their promises to Ms. George, Ms. George has sustained financial and other damages, including, but not limited to, loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon.

120.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants Kohler and Robern's actions unless and until this Court grants the relief requested herein.

## COUNT V
### Unjust Enrichment
### (Plaintiff v. Defendants Robern and Kohler)

121.    Plaintiff Devon George repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

122.    For the reasons set forth above, Defendants Kohler and Robern are liable to Plaintiff under a theory of Unjust Enrichment.

123.    Count V is brought in the alternative to Count II, above to the extent that no valid contract is found to exist.

124.    Ms. George provided to Defendants Kohler and Robern her expert services, reputation, industry contacts and performance with the expectation of reaping the benefits of the promises made to her by Defendants Kohler and Robern.

125.    Ms. George provided these services to Defendants Kohler and Robern through her hard work and arduous efforts.

17

126.    Defendants Kohler and Robern used the services provided by Ms. George to further their business activities and earn profits.

127.    After inducing Ms. George to provide her expert and valuable services, industry contacts, and reputation in the industry, Defendants Kohler and Robern failed and/or refused to honor their commitments to Ms. George with respect to the promises made to her regarding severance and bonus pay.

128.    Allowing Defendants Kohler and Robern to retain the benefits provided by Ms. George is inequitable.

129.    Defendants Kohler and Robern have been unjustly enriched at the expense of Ms. George.

130.    It is unconscionable for Defendants Kohler and Robern to so profit from their own unjust and inequitable conduct.

131.    Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants Kohler and Robern's actions unless and until this Court grants the relief requested herein.

## COUNT VI
### Defamation
### (Plaintiff v. All Defendants)

132.    Plaintiff Devon George repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

133.    Ms. George has learned that Kohler, Robern and Ms. Choruby have been falsely communicating that she was terminated for ethical reasons involving a conflict of interest.

134.    On December 19, 2024, Ms. Choruby falsely communicated to the Robern leadership team and others that Ms. George had been terminated for unethical conduct, specifically for a conflict of interest related to the product giveaway.

135.    This defamatory statement – which was made to several third parties - is not only untrue but also is devastating to Ms. George's career, career prospects and professional reputation, as it creates a false impression that, among other things, she has low moral character, is unethical, and/or is unfit to conduct her business, trade or profession.

136.    In fact, Ms. George has serious concerns about her ability to obtain subsequent employment within her industry based on defamatory communications regarding the nature of Ms. George's departure.

137.    The above-described conduct of Defendants constituted actionable defamation.

138.    Third parties to whom the false, negative statements were published understood that the statements were about Ms. George.

139.    Defendants promulgated the untrue statements with knowledge, among other things, that the statements were inaccurate, that Ms. George had not actually been terminated for alleged unethical conduct, and that Ms. George was not of low moral character, is unethical, or unfit to conduct her business, trade or profession.

140.    In communicating false, negative information to third parties about Ms. George, Defendants defamed Ms. George.

141.    Defendants' promulgation of the untrue statements exposed Ms. George to contempt, ridicule, hatred, and degradation of character, and resulted in loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, and damage to his reputation, career and future career prospects.

142.     Plaintiff is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

**PRAYER FOR RELIEF**

143.     Plaintiff Devon George repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Devon George respectfully requests that this Court enter judgment in her favor and against Defendants and Order:

   a.  Appropriate equitable relief, including reinstatement or front pay;

   b.  Defendants Kohler and Robern to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful retaliation;

   c.  Defendants Kohler and Robern to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendants Kohler and Robern's unlawful conduct;

   d.  Defendants Kohler and Robern to pay Plaintiff punitive damages;

   e.  Defendants Kohler and Robern to pay Plaintiff liquidated damages;

   f.  Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

   g.  Defendants Kohler and Robern to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's costs and attorneys' fees;

   h.  Defendants pay Plaintiff nominal damages if appropriate;

     i.   Plaintiff be granted any and all other remedies available under Title VII, the WPCL and Pennsylvania common law; and

     j.   Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff Devon George hereby demands trial by jury as to all issues so triable.

*/s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA 19103

*Attorneys for Plaintiff Devon George*

Dated:  February 23, 2026